# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**MELISSA IVEY**                                                      **PLAINTIFF**

v.                                                            **CAUSE NO. 1:17cv129-LG-RHW**

**MEGAN J. BRENNAN,**
**POSTMASTER GENERAL,**
**and UNITED STATES**
**POSTAL SERVICE**                                           **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER DENYING
## DEFENDANT'S MOTION TO DISMISS AND GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the [27] Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment filed by the defendants, Megan J. Brennan, Postmaster General, and United States Postal Service, in this sexual harassment lawsuit. The plaintiff, Melissa Ivey, filed a response in opposition to the Motion, and the defendants filed a reply. After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the defendants' Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1) should be denied, because the defendants do not have sovereign immunity in this Title VII lawsuit. However, the Court finds that the defendants' Motion for Summary Judgment should be granted, because the alleged harassment was not sufficiently severe or pervasive and Ivey has insufficient evidence to show that the defendants retaliated against her.

## BACKGROUND

At the time of the incidents that led to the filing of this lawsuit, Ivey worked as a part-time rural carrier associate for the United States Postal Service in Moss Point, Mississippi.[1] Rural carrier associates serve as substitutes for full-time carriers who are off from work. Her "first-line," or immediate, supervisor was Joe Brown. Her "second-line" supervisor was Shane Hodges. Therefore, Hodges served as Brown's supervisor, and Brown served as Ivey's supervisor. Ivey claims that, beginning in March 2012, Hodges began making comments about Ivey and Brown. Ivey explained during her deposition that Hodges would say, "Joe Brown sure likes him some Melissa Ivey. Joe Brown sure does want some Melissa Ivey. He wants you as his lover." (Defs.' Mot., Ex. 1 at 41.) Hodges also allegedly said, "Joe Brown sure does like them Ivey women. He wants Melissa Ivey. He likes Melissa Ivey." (*Id.* at 42.) She testified that Hodges made the comments "too many times to count." (*Id.* at 35.) She believes he made the comments more than ten times over a period of weeks. Ivey thought Hodges was serious when he made the comments. She reported Hodges' alleged comments to Brown on one occasion, and he acted surprised. She felt it was too humiliating to speak with Brown about the comments again.[2]

---

[1] Ivey now works as a full-time rural letter carrier at the same USPS branch.
[2] Hodges denies making the statements, but "[o]n a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *See E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

In May 2012, Ivey told her co-worker Dennis Hebert that Brown had asked another co-worker to help Ivey because Ivey was unfamiliar with her route. Hebert began screaming, acting aggressive, and using profanity. He threatened Ivey that if he ever became the branch's supervisor he would make sure that substitute rural carriers do their job. He also called Ivey "a damn whiner" and threatened to get rid of her. (*Id.* at 68.) He repeatedly asked her, "Who are you f***ing, that you don't have to do no work around here?" (*Id.* at 77-78.) Ivey immediately reported the incident to Hodges and Brown, who reassured Ivey and immediately called Hebert into the office. Hebert was reprimanded, but he was not reassigned. Ivey claims that Hebert called her and apologized, but he continued to treat her badly. She testified that Hebert's subsequent comments were not sexual in nature.

Ivey filed this lawsuit against the Postmaster General and USPS, alleging a sexual harassment-based claim of hostile work environment and retaliation. The defendants filed the present Motion to Dismiss, asserting sovereign immunity, or in the alternative Motion for Summary Judgment based on the merits.

## DISCUSSION

### I. MOTION TO DISMISS

The defendants argue that they are entitled to sovereign immunity, because Ivey's Complaint alleges that this Court has jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 39 U.S.C. § 403(c). The defendants assert that the federal government is immune from lawsuits based on the statutes enumerated by Ivey in her Complaint. Ivey's Complaint also states, "The Plaintiff will further

show that she has exhausted her administrative remedies as required and she made a timely filing of this change [sic] before the United States Postal Service Equal Employment Opportunity and the U.S. Equal Opportunity Commission." (Compl. 2, ECF No. 1.)

"When considering a motion to dismiss for lack of subject matter jurisdiction, a district court may consider: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *United States v. Renda Marine, Inc.*, 667 F.3d 651, 654 (5th Cir. 2012) (quoting *Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 734 (5th Cir. 2010)). Federal courts have jurisdiction over lawsuits filed against the United States and its agencies only to the extent that sovereign immunity has been waived. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "A waiver of sovereign immunity cannot be implied, but must be unequivocally expressed." *Shanbaum v. United States*, 32 F.3d 180, 182 (5th Cir. 1994). "28 U.S.C. § 1331 is a general jurisdiction statute and does not provide a general waiver of sovereign immunity." *Id.*

39 U.S.C. § 403(c) provides, "In providing services and in establishing classifications, rates, and fees under this title, the Postal Service shall not, except as specifically authorized in this title, make any undue or unreasonable discrimination among users of the mails, nor shall it grant any undue or unreasonable preferences to any such user." Therefore, this statute, by its plain language, does not apply to employment discrimination.

The Civil Rights Act, 42 U.S.C. § 1983, "entitles an injured person to money damages if a state official violates his or her constitutional rights." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). It does not provide relief for constitutional violations committed by federal officials. *See id.* Furthermore, "[T]itle VII provides the exclusive remedy for employment discrimination claims raised by federal employees." *Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir. 1996). The federal government has waived sovereign immunity as to Title VII claims. *See* 42 U.S.C. § 2000e-16(c). As a result, this Court must determine whether Ivey's claims could be construed as Title VII claims.

"Under the Federal Rules of Civil Procedure, a pleading, or pretrial order, need not specify in exact detail every possible theory of recovery — it must only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Thrift v. Estate of Hubbard*, 44 F.3d 348, 356 (5th Cir. 1995). Thus, "[a]ll the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Burzynski*, 989 F.2d 733, 738 (5th Cir. 1993); *see also* Fed. R. Civ. P. 8(a).

Ivey's Complaint states that she exhausted her remedies pursuant to the EEOC, and she seeks "reasonable attorney's fees pursuant to 42 U.S.C. § 2000 et seq. [sic], as amended . . . ." (Compl. 4, ECF No. 1). The Court assumes that the reference to "42 U.S.C. § 2000 et seq." is a typographical error, and that Ivey intended to seek attorney's fees pursuant to Title VII, 42 U.S.C. § 2000e et seq. The

Court finds that Ivey's Complaint contained sufficient information to put the defendants on notice that she is pursuing relief pursuant to Title VII. As explained previously, the federal government waived sovereign immunity for Title VII claims; thus, the defendants' Motion to Dismiss based on sovereign immunity must be denied.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment may be filed by any party asserting that there is no genuine issue of material fact and that the movant is entitled to prevail as a matter of law on any claim. Fed. R. Civ. P. 56. The movant bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.* at 324-25. The non-movant may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

### A. SEXUAL HARASSMENT-BASED HOSTILE WORK ENVIRONMENT CLAIM

"To prevail on a sexual harassment-based claim of hostile work environment against a supervisor under Title VII, an employee must prove: '(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4)

that the harassment affected a term, condition, or privilege of employment.'"
*Seibert v. Jackson Cty., Miss.*, 851 F.3d 430, 437 (5th Cir. 2017) (quoting
*Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007)).
The Fifth Circuit has explained:

> To affect a term, condition, or privilege of employment, sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment. To determine whether conduct is severe or pervasive, we will look to the totality of the circumstances. Relevant factors include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Finally, the conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so.

*Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (internal citations and quotation marks omitted). An isolated incident can alter the terms, conditions, and privileges of employment if the incident is egregious. *Lauderdale*, 512 F.3d at 163. Frequent incidents that are not severe can also be sufficient. *Id.* "Thus, the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Id.* (internal quotation marks omitted). "A recurring point in [our] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 394 (5th Cir. 2007) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

-7-

While Ivey's allegations describe inappropriate, offensive, and unwanted conduct, they do not rise to the level of severity or pervasiveness, as defined by Fifth Circuit precedent, to demonstrate a hostile work environment. Ivey alleges one incident of sexual harassment by Hebert, and more than ten incidents in which Hodges made comments over a period of weeks. Hodges allegedly claimed that Ivey's immediate supervisor had a crush on her, and Hebert asked her who she was having a sexual relationship with in order to obtain favorable treatment. Hodges' alleged comments were simple teasing, while Hebert's comment was isolated and not severe or egregious enough to create a hostile work environment under Fifth Circuit precedent. As a result, the defendants are entitled to summary judgment as to Ivey's hostile work environment claim.

**B. RETALIATION CLAIM**

To establish a prima facie case of retaliation, Ivey must demonstrate that: "(1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). Ivey alleged in her Complaint that the defendants retaliated against her for reporting Hebert's conduct by failing to pay all of her mileage for the day that Hebert harassed her. However, at her deposition, Ivey admitted that she did not know whether she was paid the full mileage for that date. Therefore, Ivey cannot demonstrate that the defendants subjected her to an adverse employment action, and she cannot present a prima

facie case of retaliation.  The defendants are entitled to summary judgment as to Ivey's retaliation claim.

## CONCLUSION

For the foregoing reasons the defendants are entitled to summary judgment as to Ivey's retaliation and hostile work environment claims.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the [27] Motion to Dismiss for lack of jurisdiction filed by the defendants, Megan J. Brennan, Postmaster General, and United States Postal Service is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the [27] Motion for Summary Judgment filed by the defendants, Megan J. Brennan, Postmaster General, and United States Postal Service is **GRANTED**.  Melissa Ivey's claims against the defendants are hereby **DISMISSED WITH PREJUDICE**.  The Court will enter a separate judgment pursuant to Fed. R. Civ. P. 58.

**SO ORDERED AND ADJUDGED** this the 23rd day of August, 2018.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE